———o———

THE STATE *v.* FRANKLIN B. COLTON.

*Election Officer Refusing a Vote—Naturalization Papers—Sufficiency of.*

Before an election officer can be convicted of wilfully and knowingly refusing to receive the vote of an elector it must be proven that the elector, in person, tendered his ballot to the officer and at the same time produced the necessary evidence of his qualifications as an elector.

A judicial officer of election cannot question the sufficiency of naturalization papers of an elector, properly certified and sealed by the clerk of the court issuing the same.

Where an officer, judicial or otherwise has the opportunity to ascertain what, under circumstances arising or expected to arise, is his duty, and neglects to do so, and chooses to act without such knowledge, he takes the risk of acting on his own responsibility and must be held to intend the consequence of such action.

(*New Castle, February, 1891.*)

INDICTMENT under Sec. 9 of Chap. 15 of the Rev. Code, for refusing to accept a legal vote at the Gen. Election held on the fourth day of November, 1890, at the 12th District of the 5th Ward of the City of Wilmington : to wit, that of Louis De Stepanes, an Italian by birth.

*John Biggs,* for the State.

*Benjamin Nields,* for the defendant.

COMEGYS, C. J., charged the jury as follows:

The State, in prosecutions under the ninth Sec. of Chap. 16 of the Rev. Code, must prove to the satisfaction of the jury:

1st. The right to vote of the alleged voter: in this case that Stepanes had been duly naturalized, his residence as required by the Constitution, and his payment of a County tax assessed at least six months before the election held as aforesaid.

2d. That being thus qualified he offered to vote at said election, and that his vote was refused by the defendant.

With respect to the first requirement, it may be said to be without dispute that De Stepanes had a valid right to vote at that election of the 4th of November last. That is not disputed.

In regard to the second, the proof produced by the State, through its witnesses examined upon that point, is that Stepanes did offer to vote by handing in at the window, as other voters do on similar occasions, his ballot; that at the same time he handed in his tax receipt, and that the certificate of his naturalization, by which he was clothed with citizenship in the Unitrd States and this State, was presented to the election officers at the same time. On the other hand some of those present, like the other witnesses either as officers or clerks of the officers, testified, one of them that no offer to vote was in fact made by Stepanes, and the others that they did not hear or see any such offer made. This creates a conflict of testimony upon that point, and it must be clear to the jury that such offer was in fact made, otherwise the State has not supported the charge in the indictment of the refusal by the defendant of the vote of Stepanes. It is difficult to understand why the election officers should have considered the right of Stepanes, unless he had attempted to assert it, by offer of his ballot. But the question whether he did offer to vote, or not, is for the jury alone and not one for the Court to pass upon.

Supposing you believe from the testimony that, upon the occa-

sion alleged in the indictment, Stepanes did offer to vote, and that the defendant refused to receive his ballot, and upon the alleged ground that the certificate of his naturalization which he produced to the officers, as part of the evidence of his right to vote, was invalid, because it was different in its language from a blank form which the defendant had shown at any earlier stage of the election and then exhibited as having been delivered to him as a guide in determining upon the legality of naturalization papers. You are then to determine whether, notwithstanding such alleged excuse on his part for rejecting the vote, he is answerable for willfully and knowingly refusing the vote of Stepanes. In order that you may reach a satisfactory conclusion on this point (and the case turns upon the motive of the defendant) it is proper that we should say to you what the law generally is, in cases of public officers whose duties require the exercise of judgment, and not simple action without discretion, or option.

It is a general rule of law that judicial officers (which may be taken to include all who have power to judge and decide before final action) are not responsible for what are called errors of judgment alone : that is, they are not held to infallible judgment. When they act honestly, and yet erroneously or by mistake, they are answerable to no punishment, nor to damages in a civil action by a party aggrieved. Whether however, their action is from mistake or error of judgment, or is a wilful act, that is, an act which they know to be wrong, then they are liable and must answer the consequences of their misconduct. " What is then the proof to be, that the defendant, in a prosecution for such misconduct, knows he was acting wrong? That question was answered by this Court in the case of the State against Alexander Porter, 4 Harr., 557, (cited here by the defendant's counsel) tried in this county in 1845, in which the jury put to the Court a question which called for an expression upon this very point. The Court said : " What we understand the jury to mean by positive proof of cor-

ruption, is not possible in a direct sense, for the motives of a man's conduct, and the impulses of his heart, cannot be the subject of direct positive proof; but there must be proof so clear, or positive, as to produce conviction, of acts, or declarations, or circumstances, from which the party can, and indeed, have to, draw the inference of corruption. It is difficult to define corruption; but we may say, that it is the wilfully and corruptly doing an act, or omitting a duty, which a person acting in a public capacity, *knows* it to be his duty to do, or omit; in disregard of his official duty, and the obligations of his oath.

As to the connection of other persons in such violations of duty, where the corruption is proved, their participation can be no shelter or excuse for the defendant; but their consent to the act may be regarded in considering the probability of the defendant's corruption."

Additionally we may state to you that if, before a defendant charged with wilful and deliberate violation of duty, has acted, he has had produced before him the legal documentary proof by which he is required to act in making his decision, and yet he disregard that proof and act against the necessity it imposes upon him, his course will be entirely without justification, or excuse, and must therefore be taken to be wilful, and with knowledge. Any other estimate of his behavior, if sanctioned by Courts and juries, would place it absolutely in the power of election officers, to disfranchise, for the time being, voters of different political views from their own. In this case, the defendant had before him the legal proof of the naturalization of Stepanes in the form used by the District Court of this District in cases of naturalization of foreigners, with the hand of the Clerk of the Court signed to it, and the seal of the Court affixed. This was the legal documentary evidence that Stepanes had a right to vote, if he possessed the qualifications, required by our Constitution and laws, in the case of natural born citizens. There was no controversy about his possessing them, therefore the rejection of his vote must, independent of the proof,

be put upon the ground alone that such certificate of naturalization was invalid. Now, as it has not been claimed during the trial that it is in any respect invalid, the question comes down to this: had the defendant any right to question the sufficiency of such naturalization paper—thus authenticated according to the usuage of all Courts—whose acts are authenticated by certificate under their seals and the hands of their clerks? There can be but one answer to this—that he had not. If not, then there is no ground for the plea of error of judgment; for there can be no error of judgment, where there is no right to judge. I do not mean that in no case may question be made whether naturalization papers entitle a party producing them to vote (because election officers may certainly inquire into the identity of the party having them with him—with the person naturalized) but where they are as those in this case were properly authenticated by the seal of the District Court of the United States duly affixed by the Clerk and certified to under his hand their validity can not be impeached outside of that Court; and no man or tribunal can be allowed any judgment to the contrary of their legality. Such being the law, how can it be argued before you that the defendant erred in judgment of the validity of Stepanes' papers? It would seem as if the only ground upon which a jury could reach the conclusion of want of knowledge of duty in such case or of disregard of it, would be gross ignorance in the officer or such stupidity of mind as would disqualify him from comprehending such duty.

But the plea is made for the defendant, that he was misled by the blank which was delivered to him by one of those officious persons who obtained it from the office of the District Court, and who were themselves, it is most likely, quite sharp enough to know it only applied to one class of cases of naturalization. The slightest comparison of that form with the certificate of Stepanes would have made it manifest that they were dissimilar, and that the paper in possession of the defendant was not, in any respect, authenticated. Now before he adopted the latter as his guide of validity,

his obvious duty was to ascertain that it was genuine and was a safe guide to go by. This he did not do. Now where an officer, judicial or otherwise, has the opportunity to ascertain what, under circumstances arising or which are expected to arise, is his duty, and yet neglected to avail himself of it, and chooses to act without such knowledge, he takes the risk of acting on his own responsibility and must be held to intend, upon a well known legal principle, the consequence of such action, as the result of his own determination to go by his own will. No other conclusion is a rational one, unless want of knowledge of right and wrong be shown to the jury in some way. While it is not exactly true to say that every man is bound to know what the law is, yet it is true that ignorance of the law will excuse no man as a plea; and it is also true as before said, that in the case of one performing a public function or duty where the rights of others depend upon the legality of his acts, he is bound (if ignorant of his duty) to ascertain before he acts what it is, where it is in his power to do so, or abide the risk of a verdict against him and its consequences for neglect of this duty. For wilful neglect of a duty, is equivalent to wilful misconduct, and ground for inference of unlawful purpose.

Having thus given you the law in this case it only remains to say that unless you are satisfied beyond a reasonable doubt from the defendant's conduct and the other circumstances shown in the proof (of the credibility of which you are the sole judges) that the defendant wilfully and knowingly refused to receive the vote of Stepanes, you should acquit him; otherwise you should find him guilty. The weight to be given to the testimony of the witnesses is for you alone; and the case is delivered to you to be dealt with according to your conscientious convictions after having weighed and duly considered all the proof, and the law as now given to you.

V rdi ct, disagreed.